United States District Court
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                         NORTHERN DISTRICT OF CALIFORNIA

7

8    NATIONAL UNION FIRE INSURANCE            No. C-11-1892 EMC
     COMPANY OF PITTSBURGH, PA.,

9
                    Plaintiff,
                                             **ORDER DENYING PLAINTIFF'S**
10                                           **MOTION TO ENJOIN DEFENDANTS**
            v.                               **FROM PROSECUTING SIMILAR**
11                                           **LITIGATION IN KANSAS**
     PAYLESS SHOESOURCE, INC., *et al.*,
12                                           **(Docket No. 40)**
                    Defendants.
13
     _____/
14

15                              I.    **INTRODUCTION**

16          Plaintiff National Union Fire Insurance Company ("National Union") filed a Complaint for

17   Declaratory Relief on April 19, 2011, pursuant to 28 U.S.C. §§ 2201 and 2202 seeking a

18   determination of its rights and obligations with respect to certain commercial umbrella liability

19   policies it issued to Defendants Payless Shoe Source, Inc. ("Payless") and Collective Brands, Inc.

20   ("Collective Brands"). Compl. ¶ 1 (Docket No. 1). The Defendants filed a similar complaint in the

21   U.S. District Court for the District of Kansas on August 18, 2011, involving the same liability

22   policies, and substantially the same parties and claims. *See* Compl. (Docket No. 1) in *Collective*

23   *Brands, Inc. et. al. v. National Union Fire Insurance Company of Pittsburgh, PA. et. al.*, No. 5:11-

24   cv-04097-JTM-KGG.[1] Almost one year later, on June 8, 2012, Plaintiff's filed their now pending

25   _____

26          [1] Plaintiffs include a copy of this complaint as an exhibit to a declaration filed in support of
     their motion. *See* Decl. of Clinton Judd McCord, Ex. 2 (Docket No. 41-2). Under the Federal Rules
27   of Evidence, a court may take judicial notice of facts that are not subject to reasonable dispute, either
     because they are "(1) generally known within the territorial jurisdiction of the trial court or (2)
28   capable of accurate and ready determination by resort to sources whose accuracy cannot be
     reasonably questioned." Fed. R. Evid. 201. This second set of facts subject to judicial notice under

1  motion asking this Court to enjoin the Defendants from prosecuting their case in the Kansas district

2  court (Docket No. 40).  Having considered the parties' submissions and oral argument, the Court

3  **DENIES** Plaintiff's motion for the reasons set forth below.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

5          National Union issued three, one-year commercial umbrella liability policies to Payless and

6  Collective Brands effective for the period spanning February 1, 2007 to February 1, 2008

7  ("Umbrella Policies").  Compl. ¶ 14.  While this coverage was in effect, two purported class action

8  law suits were brought against Defendants, alleging they solicited potential customers in violation of

9  the Telephone and Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(B), and

10  certain provisions of Washington State law.  *Id.* at ¶¶ 10-11.  The first action, *Clark v. Payless

11  Shoesource, Inc. et al.,* No. 2:09-cv-00915-JCC ("*Clark*"), brought on behalf of a national class as

12  well as a class of Washington State residents who received pre-recorded telephone messages

13  regarding Defendants' sales promotions, has been "settled in principle, pending court approval."

14  Defs.' Opp. (Docket No. 44) at 5.  The second suit, *Kazemi v. Payless Shoe source, Inc. et al., No.

15  3:09-cv-05142-EMC*  ("*Kazemi*"), brought on behalf of a nationwide class who received

16  unauthorized text-message advertisements from Payless to their mobile telephones, was dismissed

17  when this Court entered a Final Judgment and Order of Dismissal with Prejudice approving the

18  parties' final settlement on April 2, 2012.  *Id.*  In each case, National Union denied coverage under

19  the umbrella liability policies, declined to defend the Defendants in the lawsuits, and "rejected any

20  claim for indemnity for liability" incurred as a result of the suits.  Compl. ¶¶ 12-13.

21          Defendants contend that "[u]nder Kansas law, both of the [u]nderlying [l]awsuits are covered

22  under the Policies as 'Personal Advertising Injury' and 'Property Damage.'"  Defs.' Opp. 5.  As

23  such, Defendants sought coverage for the two suits in 2010 from National Union, as well as from

24  two other insurers.  In the ensuing months, the two parties engaged in ongoing discussions regarding

25  the coverage dispute.  On April 18, 2011 Defendants sent a letter to National Union reiterating its

27  the rules of evidence encompasses *all* the parties' filings before the district court in Kansas.  *See
28  Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (court may take
judicial notice of court filings and other matters of public record).

**United States District Court**
For the Northern District of California

**United States District Court**

For the Northern District of California

position that Kansas law would resolve the insurance dispute in its favor, rendering Plaintiff responsible for the full costs of the class action settlements. *See* Decl. of Robert Sacks ISO Defs.' Opp. (Docket No. 45) ("Sacks Decl."), Exhibit E. The letter went on to warn Plaintiff that:

> "[u]nless National Union, within three weeks from the date of this letter, accepts our previous settlement offer...[REDACTED]...the offer will be withdrawn and the price of resolving these coverage issues amicably will increase. Furthermore, as you know, Payless has recently been impleaded by you, on behalf of Hartford, into the coverage action currently pending between Hartford and SmartReply relating to *Clark*. Now that you have made Payless a party to that case, *Payless is currently considering impleading National Union into this same action*, so that a complete resolution of coverage issues with respect to Payless can be obtained."

Sacks Decl. at 5 (emphasis added). The action referred to in this letter concerns a third lawsuit regarding coverage under the same insurance policies then pending in Washington State (the "Washington" litigation) between Payless' co-defendants in *Clark* and the co-defendants' insurers. *Id.* at 6. One day after receiving this letter, National Union filed the declaratory judgment action now pending before this Court. Defs.' Opp. at 6.

Even after the filing of the complaint, the parties continued to engage in settlement discussions. *See* Joint Stip. and Order Continuing CMC (Docket No. 32) at 2. Indeed, National Union twice stipulated to grant Defendants more time to answer the Complaint. *See* Stip. for Further Ext. of Time (Docket No. 14) at p. 2. Defendant ultimately answered the Complaint on August 18, 2011, four months after it had been filed, and on that same date filed a breach of contract and declaratory judgment action in the U.S. District Court for the District of Kansas seeking a determination of National Union's liability under the umbrella liability policies. *See* Defs.' Opp. at 7; *Collective Brands, Inc. et. al. v. National Union Fire Insurance Company of Pittsburgh, PA,* No. 11-CV-4097-JTM/KGG, U.S. District Court, District of Kansas ("the Kansas litigation").

Nevertheless, the two parties continued to negotiate, with this Court referring the matter to private Alternative Dispute Resolution on Sept 21, 2011. *See* Order Referring Case to Prvt. ADR (Docket No. 24). Thereafter, the parties continued mediation, and last met on May 23, 2012, to discuss the claims in both this action and the Kansas action. Joint Stip. and Order Continuing CMC (Docket No.30 ) at 2; Defs.' Opp. at 7. On June 8, 2012 Plaintiff filed the motion asking this Court

1   to enjoin Defendants' Kansas litigation.

2   **III.   DISCUSSION**

3   A.   <u>First-to-File Rule</u>

4       National Union's motion urges the Court to enjoin Defendants' prosecution of the Kansas

5   litigation on the basis of the "first-to-file" rule.  The "first-to-file" rule is a "generally recognized

6   doctrine of federal comity which permits a district court to decline jurisdiction over an action when a

7   complaint involving the same parties and issues has already been filed in another district."

8   *Pacesetter Systems, Inc. v. Medtronic Inc.,* 678 F.2d 93, 94-95 (9th Cir. 1982).  The purpose of this

9   well-established rule is to promote efficiency and to avoid duplicative litigation and thus it "should

10  not be disregarded lightly."  *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir.1991)

11  (citing *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir.1979)).

12  However, "the trial court's discretion tempers the preference for the first-filed suit, when such

13  preference should yield to the forum in which all interests are best served."  *Genentech,* 998 F.2d at

14  938 (citing *Kerotest,* 342 U.S. at 184).  A court's decision to depart from this general rule must

15  present a "sound reason that would make it unjust or inefficient to continue the first-filed action." *Id.*

16      Courts examine three factors in deciding whether to apply the first-to-file rule: (1) the

17  chronology of the two actions; (2) the similarity of the parties involved; and (3) the similarity of the

18  issues at stake.  *Alltrade, Inc.,* 946 F.2d at 625-26.  The issues and parties in the first and second

19  action need not be identical, but "substantially similar"in order for the rule to apply.  *Inherent v.*

20  *Martindale-Hubbell,* 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (quoting *Dumas v. Major League*

21  *Baseball Properties Inc.,* 52 F. Supp. 2d 1183 (S.D. Cal. 1999), *vacated on other grounds by,* 104 F.

22  Supp. 2d 1224 (S.D. Cal. June 21, 2000) *aff'd,* 300 F. 3d. 1083 (9th Cir. 2002)).  The first factor

23  requires that one action be filed meaningfully prior to the other.  *See e.g. Guthy-Renker Fitness,*

24  *L.L.C. v. Icon Health &Fitness Inc.,* 179 F.R.D. 264, 270 (C.D. Cal. 1998) (explaining that where

25  the first action was filed approximately three months before the second, the chronology factor was

26  satisfied).  Courts have declined to apply the rule where the time between the actions is relatively

27  short because the two actions will not necessarily have progressed to different stages.  *See Z–Line*

28  *Designs, Inc. v. Bell'O Int'l LLC,* 218 F.R.D. 663, 665 (N.D. Cal. 2003) (concluding that where the

**United States District Court**
For the Northern District of California

1   initial action was filed only two days before the second, the importance of the earlier filing date was

2   diminished); *see also, Recoton Corp. v. Allsop, Inc.,* 999 F. Supp. 574, 577 (S.D.N.Y. 1998)

3   (refusing to apply the first-to-file rule where two days separated the two actions); *Riviera Trading*

4   *Corp.,* 944 F. Supp. 1150, 1159 (S.D.N.Y. 1996) (not applied when four days separated the filings);

5   *Capitol Records, Inc. v. Optical Recording Corp.,* 810 F. Supp. 1350 (S.D.N.Y. 1992) (not applied

6   when 20 days separated filings).

7           The second factor, that the parties in both actions are "substantially similar," has been held to

8   include a number of plaintiff-defendant configurations that are not identical across the two actions.

9   *See Microchip Technology, Inc. v. United Module Corp.*, 2011 WL 2669627, at *3 (N.D. Cal. July 7,

10  2011).  The court in *Microchip Technology,* found that parties to litigation were "substantially

11  similar" where a party to the second action was not named in the first action, but was a wholly-

12  owned subsidiary of a defendant in the first action, and "presumably" could be added to the initial

13  action.  *Id.*; s*ee also British Telecommunications plc. v. McDonnell Douglas Corp.,* No. C-93-0677

14  MHP, 1993 WL 149860, at *4-5 (N.D. Cal. 1993) (applying first-to-file rule although a subsidiary of

15  the defendant was present in only one of the two actions.).

16          Similarly, the requirement that the issues in both actions be "substantially similar" is

17  satisfied even where different claims are advanced in each action, so long as the "key dispute" in

18  each action is the same.  *Inherent,* 420 F. Supp 2d at 1099.  For purposes of the first-to-file rule,

19  "[i]n determining whether the cases involve the same issue, it is enough that the overall content of

20  each suit is not very capable of independent development, and will be likely to overlap to a

21  substantial degree." *Supervalu, Inc. v. Exec. Dev. Sys., Inc.,* No. CV-06-329-S-BLW, 2007 WL

22  129039, at *1 (D. Idaho Jan. 12, 2007).  "The form of relief sought does not determine the similitude

23  of the issues." *Isle Capital Corp. v. Koch Carbon, Inc.,* No. 06-00525 MMC, 2006 WL 823186, *3

24  (N.D. Cal. March 28, 2006).  Thus, in *Inherent*, a district court held that although a second-filed

25  action included a claim for damages which was absent from a first-filed action for declaratory relief

26  regarding a contract dispute, the two actions were nonetheless  "substantially similar" because the

27  tortious conduct alleged in the second action was "intimately related with the validity of a Letter of

28  Interest" at the center of the contract dispute, and the damages claim advanced in the second could

United States District Court
For the Northern District of California

1   be brought as a counterclaim in the first filed action. *Inherent,* at 1098-1099. *See also Guthy-*

2   *Renker Fitness*, 179 F.R.D. at 270 (concluding that the similarity of the issues requirement was met

3   where the first action sought declaratory judgment of five patents and damages for tortious

4   interference while the second action was for patent infringement of only *one* of the five patents).

5          Applied to the instant case, it is clear that the complaint filed in this Court was

6   chronologically first. Further, the earlier filing date of the first filed action is not so close to the

7   latter filing date of the second filed action as to render the time between the two filings immaterial.

8   *See* Pl.'s Mot. to Enjoin (Docket No. 40) at p. 4-5 (noting that the complaint in the action before this

9   Court was filed four months before the complaint in Kansas). Second, the parties to the two actions

10  are "substantially similar" if not identical at this stage in the two cases. While the Kansas litigation

11  initially included two defendants not party to the instant action,[2] they have since settled with

12  Defendants in this case, leaving Payless, Collective Brands, and National Union as the sole

13  remaining litigants in the Kansas case. *See Collective Brands, Inc. v. National Union,* No. 11-cv-

14  0497-JTM-KGG, Scheduling Order (Docket No. 35) at 1.[3]

15         Finally, there is substantial similarity of the issues in the two actions. The instant action asks

16  for a declaratory judgment, seeking to resolve whether National Union is liable to Payless and

17  Collective Brands for some of the costs resulting from the two purported class action lawsuits.

18  Compl. ¶ 1. In the Kansas action, Payless and Collective Brands are seeking monetary damages for

19  breach of the insurance contract issued to them by National Union as well as declaratory relief

20  pursuant to 28 U.S.C. §§ 2201 and 2202 regarding National Union's liability for costs incurred as a

21  result of the two class action lawsuits. *See Collective Brands, Inc. v. National Union,* No. 11-cv-

22  0497-JTM-KGG, Compl. ¶ 1 (Docket No. 1). The "central question" in each suit involves whether

23  or not the umbrella liability policies cover losses incurred by Defendants resulting from their

24  advertising practices challenged in the prior litigation. As the two actions "differ only as to the

25

26         [2]  Defendants St. Paul Fire & Marine Insurance Co. and Discover Property & Casualty
    Insurance Co. were initially named as defendants in the Kansas litigation alongside National Union.

27         [3] The Court takes Judicial Notice of the Scheduling Order entered by Magistrate Judge Gale
28  (Docket No. 35) in *Collective Brands, Inc. et. al. v. National Union Fire Insurance Company of
    Pittsburgh, PA,* No. 11-CV-4097-JTM/KGG, in the U.S. District Court for the District of Kansas.

1    remedy sought," this Court concludes that the first-to-file rule is applicable.  *See Pacesetter Systems,*

2    678 F.2d at 95-96.

3    B.    <u>Exceptions to First-to-File</u>

4           The first-to-file rule "is not a rigid or inflexible rule to be mechanically applied," and in

5    certain circumstances even though the requisite factors for the rule's application have been met,

6    Courts nonetheless decline to follow its dictates.  *Pacesetter*, 678 F.2d at 95.  "The most basic aspect

7    of the first-to-file rule is that it is discretionary;" it necessarily leaves "an ample degree of discretion,

8    appropriate for disciplined and experienced judges...to the lower courts.'"  *Alltrade,* 946 F.2d at 628

9    (*quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183-84 (1952)); *see also*

10   *Pacesetter* at 95.  As the Ninth Circuit noted in *Church of Scientology*, "'[t]he first-to-file rule'

11   normally serves the purpose of promoting efficiency well and should not be disregarded lightly."

12   611 F.2d 738 at 750.  However, "[c]ircumstances and modern judicial reality...may demand that we

13   follow a different approach from time to time."  *Id.* (internal citation omitted).  Thus, "the trial

14   court's discretion tempers the preference for the first-filed suit [] when such preference should yield

15   to the forum in which all interests are best served."  *Genentech,* 998 F.2d at 938 (abrogated on other

16   grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)) (citing *Kerotest,* 342 U.S. at 184).

17          A court's decision to depart from this general rule must present a "sound reason that would

18   make it unjust or inefficient to continue the first-filed action."  *Id.*  "The circumstances under which

19   an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and

20   forum shopping."  *Alltrade* at 628; *see also Alibaba.com v. Litecubes, Inc.,* No. C 03-5574 MHP,

21   2004 WL 443712, at *2 Fn. 3 (N.D. Cal. Mar. 8, 2004) (stating that the first-to-file rule may be

22   relaxed if the first-filed suit is "plainly anticipatory" or the party has engaged in "transparent forum

23   shopping").  Other circumstances may also warrant a rejection of the first-to-file rule, such as factors

24   involving convenience to the parties or sound judicial administration.  *See e.g. Z–Line Designs,* 218

25   F.R.D. 663, 665 (N.D. Cal. 2003) (noting that a court may refuse to apply the first-to-file rule if

26   balance of convenience weighs in favor of a later-filed action); *Joe Boxer Corp. v. R. Siskind & Co.,*

27   *Inc.*, C 98-4899 SI, 1999 WL 429549 at * 9 (N.D. Cal. June 8, 1999).

28

**United States District Court**
For the Northern District of California

1.       <u>Anticipatory Suit Filed for the Purpose of Forum Shopping</u>

A Court may, in its discretion, rely on equitable grounds in deciding to depart from the first-to-file rule when the record before it reflects that the filing of the first suit evidences "forum shopping and gamesmanship." *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006). An action amounts to an anticipatory suit when the plaintiff in the first action was in receipt of "specific, concrete indications that a suit by defendant was imminent." *Ward v. Follett Corp.,* 158 F.R.D. 645, 638 (N.D. Cal. 1994) (citing *Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661 (5th Cir. 1967); *see also Inherent,* 420 F. Supp. 2d at 1099-1100 (holding that a first-filed action was anticipatory where the plaintiff filed a declaratory judgment action five days after receiving a letter from defendant which alleged plaintiff had breached the parties' contract and warned that "unless a settlement is reached within five business days a lawsuit will be filed."). Such anticipatory suits are disfavored because they are an aspect of forum shopping. *Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 602 Fn. 3 (5th Cir. 1983). As an example, the selection of a forum with no relevance to the parties suggests " the possibility of forum-shopping." *See Barnes & Noble, Inc. v. LSI Corp.,* 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011) (declaring no forum shopping occurred where the forum of the first-filed action was the district in which the defendant was headquartered and there was no difference in substantive law between the forums of the first and second-filed actions).

Some courts have noted that "the filing of a declaratory action is a 'red flag' when the plaintiff was aware that suit by the defendant was imminent." *Ex-Im Plastics v. Miwon Am,. Inc.,* No. CV 96-5710, 1996 WL 928189, at *5 (C.D. Cal. Oct. 28, 1996); *see also Guthy-Renker Fitness,* 179 F.R.D. at 272 (noting that a first-filed action for declaratory judgment may be more indicative of a preemptive strike to preserve litigation in a particular forum than a suit for damages or equitable relief). For example, in *Z-Line Design, Inc*., 218 F.R.D. 663, the court found a first-filed declaratory judgment action to be anticipatory where a defendant sent a plaintiff a cease and desist letter and the plaintiff filed an action one day before plaintiff and defendant's mutually agreed-upon deadline for plaintiff to respond to the letter. *See also Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d at 1193 (Plaintiff was "warned from the outset" that failure to execute a proposed settlement agreement and

**United States District Court**
For the Northern District of California

comply with its terms "by the specified deadlines" would result in litigation.  Plaintiff's first-filed declaratory judgment suit constituted "a form of insurance" and was held to be anticipatory.); *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) ( a "classic example of a race to the courthouse," plaintiff filed suit four days before the deadline for resolution set out in defendant's letter); *Inherent* at 1099-1100 (finding plaintiff in first-filed action's suit anticipatory where defendant's letter stated that suit would be filed within 5 days if not settlement was reached).

However, courts have been less inclined to find that a first-filed declaratory judgment action was anticipatory where the imminency of a possible lawsuit is less pronounced.  In *Bryant v. Oxxford Express, Inc.,* Bryant's first-filed declaratory judgment was held not anticipatory where Oxxford's letter to Bryant warned  it would "declare a breach" and "seek indemnification" if Bryant did not honor the license agreement at issue.  *Id*. 181 F. Supp. 2d 1045, 1048-49 (C.D. Cal. 2000). The court in *Bryant* held that Oxxford was doing nothing more than "blowing smoke" with its letter as it did not give Bryant indication that a suit was "imminent," and, thus Bryant's filing was not anticipatory.  *Id.*  Similarly, in *Guthy-Renker*, the court declined to find the action an anticipatory where a plaintiff filed a declaratory judgement after receiving a letter from a defendant regarding a patent dispute because the letter itself stated that its purpose was to give plaintiff notice of potential patent infringements in an effort to *avoid* litigation.  *Id.,*179 F.R.D. at 271.  In *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 961 (N.D. Cal. 2008), plaintiff's counsels' letter stated that if plaintiff did not receive a favorable response, it would oppose defendant's trademark application and would be forced to take further legal action, but indicated an amicable resolution should be possible.  The court held this did not present an "imminent threat of any legal action" to render defendant's suit anticipatory.

The facts in this case, and the degree of "imminent threat of legal action" they reveal, fall somewhere in between the cases that found a suit to be anticipatory, and those that did not. Payless's April 18, 2011, letter told National Union it would withdraw its settlement offer if National Union did not accept it within three weeks, and warned that it was "considering" impleading national Union it into litigation pending in Washington State (discussed *supra*).  Sacks Decl., Ex. E at 5.  On the one hand, the fact that Plaintiff initiated this action on April 19, only one

1    day after receiving the letter, suggests that it ran to the courthouse doors.  However, Plaintiff's

2    uncontested statement that the parties had been in negotiations for approximately four months before

3    this action was filed lends credibility to its position that it "commenced a declaratory judgment

4    action in the Norther District of California" in order to avoid "piecemeal resolution of [the] dispute."

5    Sacks Decl., Ex. F.  Moreover, unlike the five-day deadline threatened in *Inherent,* Payless's

6    warning to National Union did not contain the same degree of specific and imminent threat of an

7    anticipatory suit.  In addition, National Union's selection of the Northern District of California as

8    the forum for this action is not wholly irrelevant to the parties or the issues in dispute, since one of

9    the class action suits that prompted the instant case was litigated before this Court.  Without a more

10   specific indication that National Union acted out of a belief that Payless's threat to file suit was

11   "imminent," or more concrete evidence that National Union engaged in deliberate forum shopping,

12   this Court cannot find National Union's declaratory judgment action to be anticipatory.

13           2.    Bad Faith

14           Courts may also decline to apply the "first-to-file" rule when a first-filed action was filed in

15   "bad-faith."  Bad faith is evident when the plaintiff in the first action induces the other party to, in

16   good faith, rely on representations made by the plaintiff that it will not file first in order to preempt

17   the other party from filing a suit in its preferred forum.  *See Girafa.com, Inc., v. Alexa Internet, Inc.,*

18   No. C-08-02745 RMW, 2008 WL 4500858, at *7 (N.D. Cal. Oct 6, 2008) ("[h]ad Alexa intimated

19   that it would not sue to delay Girafa's declaratory judgment complaint but then sued in Texas to

20   have initiated the first action, that would constitute bad faith contemplated by the first-to-file rule.").

21   Filing first to establish tactical advantage over the defendant is not "bad-faith."  *Id.*  Nor is bad faith

22   established merely because one of the parties engaged in good-faith negotiations decides to file suit.

23   *Barnes and Noble,* 823 F. Supp. 2d 980 at 991-92.

24           Here, neither party suggests that the instant action was filed in bad-faith. Plaintiff did not

25   make any representations to Defendants that it would not file first which resulted in prejudice to the

26   defendant, and the Defendants do not allege otherwise.  *See* Pl.'s Reply (Docket No. 55) at 8.  Thus,

27   this case presents no grounds upon which to decline application of the first-to-file rule on the basis

28   of bad faith conduct.

**United States District Court**
For the Northern District of California

C.    Comity Considerations

The present case presents a rather unusual procedural posture for application of the first-to-file rule.  Normally, when "cases involving the same parties and issues have been filed in two different districts," it is "the *second* district court" that exercises its "discretion to transfer, stay, or dismiss the *second* case in the interest of efficiency and judicial economy."  *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).  To be sure, there are instances in the Ninth Circuit where the court of the first-filed action acts to enjoin further litigation of a second-filed action in a sister district court.  *See, e.g., Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834 (9th Cir. 1986); *Broadcom Corp. v. Qualcomm Inc.,* No. SACV 05-468-JVS(MLGx), 2005 WL 5925582 (C.D. Cal. 2005); *Kiland v. Boston Scientific Corp*., C 10-4105 SBA, 2011 WL 1261130 (N.D. Cal. Apr. 1, 2011).  However, these cases constitute the exception rather than the rule; the normal course taken by courts in this Circuit is for the court of the second-filed action to stay its own proceedings in favor of the first-filed action.  *See, e.g., Alltrade, Inc.*, 946 F.2d 622; *Pacesetter*, 678 F.2d 93; *Juniper Networks, Inc. v. Mosaid Technologies Inc.*, C 11-6264 PJH, 2012 WL 1029572 (N.D. Cal. Mar. 26, 2012); *Xilinx, Inc. v. Invention Inv. Fund I LP*, C 11-0671 SI, 2011 WL 3206686 (N.D. Cal. July 27, 2011).

The Supreme Court has made clear its concern regarding the "complicated problems for coordinate courts" that declaratory judgment actions like the one in this case occasionally give rise to.  *Kerotest Mfg. Co,* 342 U.S. at 183.  The first-to-file rule helps to alleviate these problems.  However,

> [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.

*Id.* at 183-84.  Part of that discretion left to the lower courts in crafting solutions to these problems includes consideration of judicial comity.

The circuit courts are generally in agreement that principles of comity restrain a district court from enjoining an action underway in a sister court.  "The federal courts long have recognized that

the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985).  As the Third Circuit notes, "[n]o precise rule governs relations between federal district courts possessing jurisdiction, but the general principle is to avoid duplicative litigation."  *E.E.O.C. v. University of PA*, 850 F.2d 969 (1988) (citing *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 817 (1976)).  "Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders," and judicial comity's "underlying policy of judicial administration...counsels against the creation of conflicts," particularly where they would work "a grave disservice to the public interest in the orderly administration of justice."  *Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986).  In line with this principle of judicial comity, the Ninth Circuit has held that "[w]hen an injunction sought in one proceeding would interfere with another federal proceeding, considerations of comity require *more than the usual measure of restraint*, and such injunctions should be granted *only in the most unusual cases*."  *Bergh v. Washington,* 535 F.2d. 505, 507 (9th Cir. 1976) (emphasis added).

Plaintiff cites as its lead case *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834 (9th Cir. 1986), for the proposition that this Court has "ample authority" to enjoin a party from proceeding with a second-filed action in a concurrent jurisdiction.  *See* Pl.'s Mot. to Enjoin at 3, Pl.'s Reply at 11.  *Decker*, however, did not announce as broad a proposition as Plaintiff suggests.  In *Decker*, the Ninth Circuit upheld a lower court's decision to enjoin the prosecution of a second-filed action under an abuse of discretion stating, "[w]hen a district court has jurisdiction over all parties involved, it *may* enjoin later filed actions."  *Id*. at 843 (emphasis added).  Quite contrary to defining this power in broad terms, the *Decker* court reiterated a holding from *Pacesetter* clarifying that the "'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."  *Decker*, 805 F.2d at 844 (quoting *Pacesetter*, 678 F.2d at 95.  As the Ninth Circuit made clear in *Bergh*, "sound judicial administration" includes observing the principles of judicial comity.

Additionally, the limited instances in which a district court in this Circuit has enjoined the court of second-filing dealt with unusual factors that counseled in favor of enjoining the second-filed

action that are not replicated here.  Thus, in *Broadcom Corp. v. Qualcomm Inc.,* the court was asked

to enjoin the second-filed of three actions for patent infringement, two of which were filed in

California district courts.  No. SACV 05-468-JVS(MLGx), 2005 WL 5925582 (C.D. Cal. 2005).

The plaintiff filed a patent infringement action in the U.S. District Court for the Central District of

California while also bringing a parallel proceeding before the United States International Trade

Commission ("ITC").  The defendant then filed its own patent infringement action in the U.S.

District Court for the Southern District located in San Diego.  The court of first-filing enjoined the

second action in San Diego, but its injunction was limited to litigation of those patent claims

pending before the ITC and would dissolve once the ITC litigation was completed.  *See Id.* at *1-2.

Further, it stayed its own first-filed action pending resolution of the ITC litigation as required under

28 U.S.C. § 1659 ("Stay of certain actions pending disposition of related proceedings before the

United States International Trade Commission").  Likewise, in *Kiland v. Boston Sci. Corp.*, No. C

10–4105 SBA, 2011 WL 1261130 (N.D. Cal. April 1, 2011), a court in this district enjoined the

defendant from prosecuting a second-filed action in the District Court for the District of Minnesota

regarding employment contracts at issue in both cases, but only *after* the Minnesota court had

voluntarily stayed its proceedings in favor of the California action.  *Id*. at *4.[4]

   In sum, considerations of comity in the case at bar counsel against enforcement of the first-filed rule via an injunction issued by the first court against the second court.  Plaintiff cites no good reason why it does not first ask the Kansas district court in the second filed action to stay proceedings therein in deference to the first-filed rule.

   The inappropriateness of employing the reverse procedure by asking this Court to enjoin the Kansas action is underscored by the fact that "courts have rejected the rule when the second-filed action had developed further than the initial suit."  *E.E.O.C.,* 850 F.2d at 976; *see also, Capitol*

_____

   [4] Indeed, without having received assurances from the Kansas district court that it has chosen to stay its own proceedings, granting Plaintiff's motion to enjoin here may create a situation similar to that in *California ex rel Lockyer, v. U.S. Dept. of Agriculture,* 710 F. Supp. 2d 916 (2008), where two courts issued conflicting injunctions so as to make compliance with both an impossibility for the parties affected.  Recognizing the dire situation created by the conflicting injunctions, a court in this district (who issued the first injunction) opted to alter its previously-issued injunction, noting that judicial comity counsels in favor "avoid[ing] rulings which may trench upon the authority of sister courts."  *Id.* at 921.

United States District Court
For the Northern District of California

1   *Records, Inc.,* 810 F. Supp. at 1355 (declining to apply the first-to-file rule, in part, because second-

2   filed action had proceeded further than the first).  In *Polaroid Corp. v. Casselman*, 213 F. Supp. 379,

3   381 (S.D.N.Y 1962), the court noted that the first-to-file rule is generally applied where there has

4   been significant investment of time and resources by the court of first-filing and where "a second

5   suit in such circumstances would be a wasteful duplication of effort and work havoc with the orderly

6   administration of justice."

7        In this case, the Kansas litigation has already proceeded to the initial discovery phase, which

8   is scheduled to conclude on August 10, 2012, leading to briefing dispositive motions commencing

9   on August 31, 2012.  *See* Scheduling Order (Docket No. 35) and Certificate of Service of First

10  Interrogatories and First Request for Production of Documents (Docket No. 36) in *Collective*

11  *Brands, Inc. et. al. v. National Union Fire Insurance Company of Pittsburgh, PA,* No. 11-CV-4097-

12  JTM/KGG (the Kansas litigation).  In contrast, this action remains in its infancy with no substantive

13  motions having come before this Court.  In comparison to the incipient nature of this case, the

14  Kansas litigation is more developed with that court having invested greater of time and resources

15  into the matter than this Court.  It would be presumptuous for this Court to enjoin the Kansas

16  litigation given its relative progress relative to the instant case.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**United States District Court**
For the Northern District of California

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to enjoin the Kansas litigation.[5]

This Order disposes of Docket No. 40.


IT IS SO ORDERED.


Dated:  August 9, 2012

_____
EDWARD M. CHEN
United States District Judge

---

[5] Local Rule 7-3 restricts the ability of parties to submit additional materials related to a pending motion after the reply to an opposition has been filed.  *See* L.R. 7-3(d) ("Once a reply is filed, no additional memoranda, papers, or letters may be filed without prior Court approval," except in certain limited circumstances).  Thus, the Court declines to consider National Union's untimely filing of "Supplemental Authorities in Further Support of Motion to Enjoin Defendants from Prosecuting Similar Litigation" (Docket No. 68).